### UNITED STATES of America, Plaintiff–Appellee,

v.

### Jose M. QUINTERO–BARRAZA, Defendant–Appellant.

#### No. 93–10764.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 1995.

Decided June 15, 1995.

Order Denying Rehearing and Suggestion for Rehearing En Banc March 7, 1996.

John C. Lambrose, Office of the Federal Public Defender, Las Vegas, NV, for defendant-appellant.

Daniel R. Schiess, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: TANG, O'SCANNLAIN, Circuit Judges, and MERHIGE, Senior District Judge.*

MERHIGE, Senior District Judge:

Jose Martin Quintero–Barraza ("Appellant") appeals his jury conviction for possession with intent to distribute a controlled substance (21 U.S.C. § 841(a)(1)) and aiding and abetting the same (18 U.S.C. § 2). His appeal also encompasses a sentence imposed on each of the two counts of the indictment returned against him. This court has jurisdiction under 28 U.S.C. § 1291.

## I.

In March, 1993, Nevada State Troopers Rosell Owens and Ken Roles stopped a vehicle containing two persons for allegedly travelling 75 miles per hour in a 65 mile per hour zone. Subsequent to the stop, Owens asked Appellant for permission to search the vehicle. Appellant consented to a search which yielded approximately ten pounds of methamphetamine, air fresheners (which are allegedly used to mask the odor of drugs), and a dated receipt from a Las Vegas Best Western motel bearing Appellant's name.

Appellant and the passenger were placed under arrest. Appellant was interviewed by Nevada Division of Investigation Officer Mark Hoekenga soon thereafter. Appellant allegedly stated that he had borrowed the car from one Ramon Lopez to use for vacation purposes. Appellant also purportedly told Hoekenga that he had never before been to Las Vegas. Finally, Appellant stated that he had met his passenger just prior to leaving for Las Vegas and that he agreed to give him a ride.[1]

A two-count indictment was filed, charging Appellant, in Count I, with conspiracy to possess with the intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. The district court dismissed this count on the first day of trial. In Count II, Appellant was charged with possession with the intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1), and aiding and abetting the same, 18 U.S.C. § 2. A jury rendered a verdict of guilty on Count II.

Despite the dismissal of count one of the indictment, Appellant was sentenced on each count to 151 months imprisonment to run concurrently. During this hearing, Appellant was represented by substitute counsel. The record does not reveal that it was ever brought to the sentencing judge's attention that Count I had been dismissed by the trial judge.

Appellant noted a timely appeal. He first alleges ineffective assistance of counsel on various grounds. He also asserts that the evidence at trial was insufficient to support a finding that he knowingly possessed methamphetamine. Finally, he asserts that the case should, at the least, be remanded to correct his sentence.

## II.

### A.  Ineffective Assistance of Counsel

■ Ordinarily, a plea of ineffective assistance of counsel should be brought in a collateral proceeding under 28 U.S.C. § 2255 because the appellate record often lacks a sufficient evidentiary basis as to "what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Molina,* 934 F.2d 1440, 1446 (9th Cir.1991). Nevertheless, where the record adequately sets forth the facts giving rise to a claim of ineffective assistance of counsel, as it does in the instant matter, the Court will consider the defendant's argument on direct appeal. *Id.* When this Court so decides, it reviews counsel's effectiveness *de novo. United States v. Birtle,* 792 F.2d 846 (9th Cir.1986).

■ The Sixth Amendment to the Constitution provides that criminal defendants "shall enjoy the right to have the assistance of counsel for his defense." U.S. Const. amend. VI. Counsel's effectiveness is ana-

---

* The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. At trial, Appellant recounted a different story. He testified that he *had* previously travelled to Las Vegas and, on such occasion, had checked into the Best Western for several days. As regards his responses to Hoekenga, he stated that he understood the officer to have asked whether

he understood the officer to have asked whether Appellant had ever *lived* in Las Vegas. Appellant further testified that, on the date of his arrest, he was travelling to Las Vegas to secure employment, and denied both leaving the motel receipt in the automobile and the existence of air fresheners. Finally, Appellant testified that he understood Owens' request for consent to search the car and acknowledged providing such consent, yet denied any knowledge that drugs were contained in the car.

lyzed pursuant to the doctrine set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). According to *Strickland,* there are two components to an effectiveness inquiry, and the petitioner bears the burden of establishing both. *Id.; accord United States v. Olson,* 925 F.2d 1170, 1173 (9th Cir.1991). First, the representation must fall "below an objective standard of reasonableness." 466 U.S. at 687–88, 104 S.Ct. at 2064. Courts scrutinizing the reasonableness of an attorney's conduct must examine counsel's "overall performance," both before and at trial, and must be highly deferential to the attorney's judgments. *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065. In fact, there exists a "strong presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *United States v. Palomba,* 31 F.3d 1456, 1460 (9th Cir.1994) (*quoting Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066). In short, the defendant must surmount the presumption that, "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Thus, the proper inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

■ If the petitioner satisfies the first prong, he must then establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. This court has stated that prejudice analysis must not only focus on outcome determination, but on the question of whether or not "the result of the

proceeding was fundamentally unfair or unreliable." *Palomba,* 31 F.3d at 1461 (*quoting Lockhart v. Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993)).

**1. Failure to File Pretrial Objections**

■ Appellant alleges that his counsel's failure to object to both the stop and search of the vehicle and Appellant's consent to the search constitutes ineffective assistance of counsel. This omission, Appellant asserts, was prejudicial because it effectively denied him the right to an evidentiary hearing on these matters, and resulted in the district court's determination that Appellant waived his right to have evidence suppressed on Fourth Amendment grounds.[2]

**a. Pretextual Stop**

Appellant asserts that counsel's failure before trial to assert that the stop was pretextual denied him the opportunity to argue this claim at an evidentiary hearing. The government, on the other hand, argues that even if an evidentiary hearing had been granted, Appellant would not have prevailed.

■ Any challenges to Owens' decision to stop Defendant's car had to be made before trial. Fed.R.Crim.P. 12(b)(3) (motions to suppress must be submitted prior to trial). It is well settled that "[a] pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place ... for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." *United States v. Cannon,* 29 F.3d 472, 474 (9th Cir.1994) (citations omitted). The proper inquiry is "whether a reasonable officer 'would have' made the stop anyway, apart from the suspicions about other more serious criminal activity." *Id.* at 476.

2. As to the failure to allege a pretextual stop, the district judge concluded that such constitutional challenges can "effectively" be waived when not raised before trial and that he would "not permit it to be raised now at this point, unless for some reason you were disallowed to do so, and I don't see it." Tr. at 141. Likewise, the court would not allow Appellant to question the Trooper as to his reasons for the search and Appellant's consent to the search.

Appellant, citing Federal Rule of Criminal Procedure 12(f), uses these rulings to further the additional argument that the District Court erred in concluding that Appellant waived his constitu-

tional claims. Federal Rule 12(f) states that failure to make a timely pretrial motion, as required by Rule 12(b)(3), constitutes a "waiver thereof, but the court *for cause shown* may grant relief from the waiver." Fed.R.Crim.P. 12(f) (emphasis added). Appellant asserts that the district court erred in not granting relief from waiver *sua sponte.*

The district court's actions in this regard are reviewed for abuse of discretion. *See United States v. Booker,* 952 F.2d 247, 249 (9th Cir. 1991). Because the record fails to demonstrate any such abuse, we conclude that this argument is meritless.

■ An evidentiary hearing is ordinarily appropriate where "the moving papers are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Ayers,* 924 F.2d 1468, 1481 (9th Cir.1991) (citations omitted). Courts in this circuit clearly follow this principle where an accused is claiming a pretextual stop. *See e.g., United States v. Perez,* 37 F.3d 510 (9th Cir.1994) (pretrial hearing held on defendant's claim that stop was pretextual); *United States v. Millan,* 36 F.3d 886 (9th Cir. 1994) (same).

■ While the record reveals that the district court, on proper motion, may well have granted a hearing, the record also demonstrates that the district court could have readily concluded that any reasonable officer would have stopped a vehicle travelling 75 miles per hour. *Cf. Perez,* 37 F.3d at 513 (stop not pretextual because reasonable officers would have stopped a weaving van). Thus, Appellant has failed to establish that a reasonable probability exists that the outcome of any pretrial hearing would have been in his favor. Moreover, the record demonstrates that counsel made an uninformed judgment call.[3] Such an oversight simply cannot be characterized as falling outside the "wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

b. Appellant's Consent to the Search

■ Appellant asserts that a pretrial challenge to Appellant's consent to the search should have been made. Appellant's contention is without merit. Indeed, the trial transcript plainly shows that Appellant, despite speaking only broken English, fully understood Owens' request to search the car, and unequivocally consented to the search. Tr. at 268–69. Counsel was under no obligation to bring a plainly unavailing motion before the district court. *James v. Borg,* 24 F.3d 20, 24 (9th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994).

2. Failure to Strike Juror

Appellant's second ineffective assistance of counsel claim concerns counsel's failure to strike a potentially biased juror. The facts concerning this matter are uncontradicted. During voir dire, prospective juror David Miller, a criminal justice student, stated his belief that one is guilty before proven innocent. Tr. at 20. He also stated that it would be "difficult" for him to be impartial. *Id.* Counsel did not strike Miller; instead, he expressed his admiration of Miller's truthfulness.[4]

Appellant asserts that he was prejudiced by this action because the eventual seating of Miller on the panel deprived him of his right to an impartial jury. *See United States v. Eubanks,* 591 F.2d 513, 517 (9th Cir.1979) ("even if 'only one juror is unduly biased or prejudiced,' the defendant is denied his constitutional right to an impartial jury"). The government, on the other hand, argues that counsel made a tactical decision that should be accorded deference.

■ Counsel's actions in this regard pose a more difficult question for this Court. It is manifest, however, that he was making a tactical decision in declining to strike Miller. Counsel appears to have concluded that because Miller was honest about his pretrial views, he would also honestly apply the law as outlined in the judge's instructions. Under *Strickland,* our review of this tactical decision "must be highly deferential," and we must accord the decision "a strong presumption" of validity, regardless of whether we agree with it. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. We are not persuaded that appellant has overcome that strong presumption.

We also conclude that the district court did not err in concluding that Miller was not "unduly biased or prejudiced." The Supreme Court has suggested that the relevant test for determining whether a juror is biased is "whether the juror[ ] ... had such fixed opinions that [he] could not judge impartially the guilt of the defendant." *Patton*

---

3. At trial, counsel told the Court that he did not raise a pretrial motion challenging the stop because he thought it would not be granted in that jurisdiction.

4. Counsel stated his impression of Miller in the following manner: "I was impressed with him. I thought he gave a very candid answer." Tr. at 32.

*v. Yount,* 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984) (citation omitted). The Court has also mandated that we give "special deference" to the trial court's decision on juror bias.[5]

In spite of juror Miller's statements, we are not persuaded that his views were so "fixed" that he would not and did not honor his oath to faithfully apply the law. We must pay due respect for the oath taken by Miller given the absence of any stated intention to disregard it. Indeed, the possession of such a view of the criminal justice system does not immediately translate into an unwillingness to abide by the oath one takes as a juror.

Accordingly, in deference to the wide latitude afforded trial counsel's tactical decisions, and in light of our conclusion that *Eubanks* has not been violated, we will not second-guess counsel's decision to allow Miller to remain on the panel.

### 3. Failure to Object to *Allen* Charge

Appellant challenges his counsel's failure to object to an *Allen*[6] charge which was given to the jury after it reported being deadlocked following four hours of deliberations. Upon notice that the district court was going to give an *Allen* charge, no one objected. Thus, the charge, which did not contain a burden of proof instruction, was read to the jury. *Id.* at 323–27.

Appellant alleges that objections to *Allen* charges are "imperative" owing to their inherently coercive nature, especially when the charge fails to include a reasonable doubt instruction. The government disagrees, suggesting that counsel's comment that the jury could "possibly come to a decision with additional time," indicated that he did not object for tactical reasons. Tr. at 324.

■ It is true that an *Allen* charge is generally disfavored as "[a] single *Allen* charge, [even in its most acceptable form,] stands at the brink of impermissible coercion." *United States v. Seawell,* 550 F.2d 1159, 1163 (9th Cir.1977) (citations omitted). Nevertheless, incorporating a burden of proof instruction in an *Allen* charge is not mandatory. While such a provision is "helpful," its absence "is but one factor to be considered in assessing the coercive effect of the instruction as a whole." *United States v. Cuozzo,* 962 F.2d 945, 952 (9th Cir.), *cert. denied,* 506 U.S. 978, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992).

■ It is uncontested that the jury was "amply instructed" as to burden of proof during the initial charge. *Cuozzo,* 962 F.2d at 952. Moreover, counsel was, once again, apparently employing trial strategy in not objecting to the charge. Given these considerations, in addition to the lack of any evidence that the charge was explicitly coercive, the instant matter is simply not one in which the charge itself, or its contents, should be questioned. Accordingly, we cannot agree the failure to object to the *Allen* charge rises to the level of ineffective assistance of counsel.

### 4. Failure to Renew Rule 29 Motion

At the close of the prosecution's case-in-chief, counsel moved the Court for acquittal under Federal Rule of Criminal Procedure 29(a). The Court unhesitatingly denied the motion. The motion was not renewed after the presentation of Appellant's evidence. Appellant now argues that this "non-strategic error" was prejudicial as it subjected any subsequent objection to the sufficiency of the

---

**5.** *See, e.g., Thompson v. Keohane,* —— U.S. ——, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). In this recent case, the Court explained that "juror impartiality" is a "factual issue," the resolution of which "depends heavily on the trial court's appraisal of witness credibility and demeanor." *Id.,* —— U.S. at ——, 116 S.Ct. at 464–65. The Court further noted that "[t]his Court has reasoned that a trial court is better positioned to make decisions of this genre, and has therefore accorded the judgment of the jurist-observer 'presumptive weight.'" *Id.,* at ——, 116 S.Ct. at 465 (citation omitted). Although arising in the context of 28 U.S.C. § 2254(d), *Thompson's* rea-

soning is equally applicable here. *See Patton,* 467 U.S. at 1038, 104 S.Ct. at 2892 ("As we have said on numerous occasions, the trial court's resolution of [juror bias] questions is entitled, *even on direct appeal,* to 'special deference.'") (citation omitted) (emphasis added).

**6.** *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (trial court may instruct a deadlocked jury to listen, and give due consideration to, each other's opinions, views and arguments in an effort to attain a unanimous verdict).

evidence to a less scrutinizing standard of review. The government counters, arguing that Appellant was not prejudiced because the district court would have certainly denied the motion.

■ The failure to renew a motion for acquittal under Federal Rule 29(b) undoubtedly subjected any appellate challenge to the sufficiency of the evidence to a lower standard of review. *See United States v. Kuball,* 976 F.2d 529, 531 (9th Cir.1992) (evidence reviewed only "to prevent a manifest injustice or for plain error" where Rule 29 motion not renewed). Nevertheless, this oversight does not rise to the level of *Strickland* ineffectiveness. Indeed, Appellant has failed to establish that this case amounted to anything other than a credibility contest, properly submitted to a jury for its consideration. Consequently, we are again unpersuaded by Appellant's argument.

5. Expert Witnesses

Appellant claims that counsel's failure to call a linguist and a handwriting expert to the stand constituted ineffective assistance. According to Appellant, the linguist would have confirmed that Appellant understood Officer Hoekenga to ask whether or not defendant had ever *lived* in Las Vegas, not whether he had ever *been* to Las Vegas. Such evidence, Appellant suggests, would have rebutted any inference that Appellant lied to Hoekenga during the post-arrest interview. The handwriting expert would have established that the signature on the motel receipt found in the vehicle was not Appellant's.

■ These alleged oversights, however, neither fall "below an objective standard of reasonableness" nor "undermine confidence in the outcome" of Appellant's trial. *Strickland,* 466 U.S. at 687–88, 694, 104 S.Ct. at 2064, 2068. As regards the language expert, Appellant ignores the facts that the interview was conducted wholly in Spanish, that Spanish is Appellant's native language, and that Hoekenga is fluent in Spanish.[7] In short, it is unlikely that Appellant misunderstood Hoekenga during the interview. This conclusion is underscored by Hoekenga's testimony

that Appellant, after being shown a copy of the hotel receipt when he allegedly denied having been to Las Vegas before, shrugged his shoulders and looked down at the floor. S.E.R. at 87–90.

■ The same conclusion applies to the failure to call a handwriting expert. As the government correctly notes, all handwriting on the receipt (or "folio") is apparently that of a hotel clerk as the only documentation completed by a hotel guest is the *registration card. See* S.E.R. at 95, 99. Thus, the testimony of an expert as to any handwriting by Appellant on the *receipt* essentially would have been inconsequential to the defense.

B. Sufficiency of the Evidence

■ Appellant asserts that the evidence adduced at trial was insufficient to support a verdict. Because Appellant "effectively waived his objection to the sufficiency of the government's evidence" in failing to renew his Rule 29 motion, this Court will only review the evidence for plain error, or to prevent manifest injustice. *Kuball,* 976 F.2d at 531.

■ Appellant was convicted of possession with the intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1). The elements of this crime are (1) knowingly (2) possessing the substance (3) with the intent to distribute. *United States v. Davila–Escovedo,* 36 F.3d 840, 843 (9th Cir.1994) (citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 953, 130 L.Ed.2d 896 (1995). The parties agree that the only element at issue is the knowledge predicate; thus, the issue on appeal is whether the jury plainly erred in concluding that Appellant knew that drugs were in the vehicle.

■ This Court has held that knowledge may be reasonably inferred where the defendant drives a car "laden" with illegal substances. *United States v. Savinovich,* 845 F.2d 834, 838 (9th Cir.1988), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *United States v. Haro–Portillo,* 531 F.2d 962, 963 (9th Cir.1976). It is equally well settled that "mere possession of a substantial quantity of drugs will support an inference of knowledge." *Davila–Escovedo,*

---

**7.** Hoekenga lived in Central America until he was thirteen, majored in Spanish literature at

Stanford University and applies the Spanish language on a regular basis in his job.

36 F.3d at 843 (citations omitted). Finally, any inconsistencies in a defendant's story may reasonably strengthen an inference of knowing possession. *Haro–Portillo,* 531 F.2d at 963.

■ According to the record, Appellant was the driver of the vehicle when the Troopers made the stop. While a passenger was also in the car, the passenger apparently lacked any previous contact with either the automobile or its contents, as evidenced by Appellant's statement that he fortuitously picked up the passenger while stopping for gas. Thus, it could be reasonably inferred that Appellant knowingly exercised, in effect, exclusive dominion or control over the methamphetamine. Moreover, the fact that the vehicle contained approximately ten pounds of the drug with a street value approximating $100,000.00 is also sufficient to support any inference of knowing possession. Finally, there are the inconsistencies in Appellant's story regarding previous trips to Las Vegas, air fresheners and the like. The jury clearly chose to disbelieve Appellant, and this Court is bound to "respect the exclusive province of the jury to determine credibility of witnesses." *Davila–Escovedo,* 36 F.3d at 843 (citations omitted). On this record, it is simply not possible to conclude that the jury committed plain error in concluding that Appellant drove the car knowing that it contained methamphetamine. Likewise, there is no indication that the jury verdict resulted in manifest injustice.[8]

## C. Sentencing Error

At the sentencing hearing, Appellant, despite the prior dismissal of Count I, was sentenced to 151 months on each count of the indictment to run concurrently. There is no disagreement between the parties that the sentence on Count I is invalid, and that the sentence on Count II must be reconsidered in view of that fact. Accordingly, this matter will be remanded to the district court with instructions to void the sentence on Count I and resentence Appellant on Count II.

## III.

In summation, we conclude that Appellant has not produced evidence warranting the relief that he seeks as to Count II; thus, the judgment on that count is affirmed.

The case is remanded, however, to the end that the district court void the sentence on Count I by correcting the record to reflect the dismissal of that count as ordered by the trial judge. Additionally, we remand for resentencing of Appellant on Count II.

AFFIRMED IN PART AND REMANDED.

TANG, Senior Circuit Judge, dissenting:

I respectfully dissent. Quintero–Barraza's conviction was based entirely on circumstantial evidence, arrived at only after an initially deadlocked jury was given an *Allen* charge. Had defendant's counsel rendered effective assistance, there is a "reasonable probability that, but for counsel's unprofessional efforts," the defendant would not have been convicted. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Three of the attorney's errors had a direct impact on whether the jury found the defendant guilty or innocent. Defense counsel (1) allowed the court to impanel a facially biased juror who believed the defendant to be guilty even before the trial started, (2) failed to call expert witnesses to bolster the defendant's claim of innocence, and (3) failed to object to an *Allen* charge that did not have a beyond a reasonable doubt instruction.

In conjunction, these three errors affected the jury's ability to render a fair verdict and severely "undermine[d] confidence in the outcome" of defendant's trial. *Strickland,* 466 U.S. at 687–88, 694, 104 S.Ct. at 2064, 2068. Even if we focus on each error individually, defense counsel's failure to strike a facially biased juror constitutes, by itself, ineffective assistance of counsel.

## I.

The colloquy at voir dire indicates that juror David Miller believed the defendant to be guilty even before the trial started, and that he *continued* to believe the burden of

---

8. Even if the evidence is reviewed under the usual standard, we conclude that the record fails to demonstrate that a "rational trier of fact could [not] have found the essential elements of the

crime beyond a reasonable doubt." *United States v. Kaplan,* 895 F.2d 618, 620 (9th Cir. 1990) (citations omitted) (emphasis in original).

proof to be on the defense to show the defendant is innocent:

> DAVID MILLER: [S]tudying criminal justice kind of hard—you know—you are on the side of the law, you say, and it's hard for me to really—in other words, just guilty until proven innocent instead of innocent until proved guilty. I don't know.

> .    .    .    .    .

> THE COURT: Now would that be—would that be fair to the defense? Your attitude and your feeling and your background, would it be fair to the defense?
> DAVID MILLER: *I'd tried to be impartial, but it would be very hard* because—
> THE COURT: Okay.
> DAVID MILLER: *I believe my mind is set* and stuff, but I would try to be impartial.
> THE COURT: You'd try but you say it's difficult.
> DAVID MILLER: It would be difficult, yeah.

> .    .    .    .    .

> DAVID MILLER: —the way I feel—the way I feel is: If you are in court, you know, you are in there for some reason and, you know, so, it's—*I'd have to be proven that he's not guilty instead of being proven that he is guilty.*
> THE COURT: *So, you'd put the burden on the defense?*
> DAVID MILLER: *Yeah.*

> .    .    .    .    .

> THE COURT: .... You are not condemned. You are not criticized at all for your feelings because we might find a contract case here for you to try to be on the jury again. I think—but I think Nevada has a one day one trial rule. So, two years from now, or however long from now, when you're next called, but I do appreciate your candor. Thank you very much.[1]

Tr. at 19–21 (emphasis added).

This colloquy indicates that Miller believed his mind was "set" and that it would be "difficult" for him to be impartial. In *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979), this circuit explicitly held that "even if 'only one juror is unduly biased or prejudiced,' the defendant is denied his constitutional right to an impartial jury." Here, Miller believed the defendant to be guilty even before the trial started because, as he stated, "[i]f you are in court, you know, you are in there for some reason." It is difficult to fathom a more biased juror than one who believes the defendant is guilty until proven innocent.

## II.

The majority concludes, however, that defense counsel did not render ineffective assistance based on the following rationale:

> [Counsel] was making a tactical decision in declining to strike Miller. Moreover, we must pay due respect for the oath taken by Miller given the absence of any stated intention to disregard it. Indeed, the possession of such a view of the criminal justice system does not immediately translate into an unwillingness to abide by the oath one takes as a juror. Accordingly, in deference to the wide latitude afforded trial counsel, we will not second-guess counsel's decision to allow Miller to remain on the panel.

Although wide latitude is afforded trial counsel in an ineffective assistance of counsel claim, there is another right at issue here. Under the Sixth Amendment, the defendant has a right to effective assistance of counsel *and* the right to an impartial jury.

With respect to the right to have an impartial jury, there does not appear to be any case that holds that the juror's "oath" wipes out any bias or prejudice of the juror. Indeed, the case law suggests otherwise. In *Eubanks*, the Ninth Circuit did not state anywhere in its opinion that a biased or prejudiced juror no longer is biased or prejudiced simply because that juror has taken an oath.

The majority reasons, however, that it will not "second-guess counsel's decision to allow Miller to remain" on the jury. This reasoning is confusing because either Miller is biased or he is not biased. If he is not biased, then counsel simply made no error in impan-

---

1. Even the district court here believed that David Miller was so biased that he expected Miller to be put on a "contract" case or another civil case two years from now.

eling an unbiased juror. If Miller is biased, then the issue is whether counsel can functionally waive the defendant's right to an impartial jury.

Case law suggests that counsel cannot waive a defendant's right to an impartial jury. In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court stated:

> The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

Here, if the prosecution had an entire jury that was partial to it, then the prosecution's case would no longer be one that survived the "crucible of meaningful adversarial testing." *See Johnson v. Armontrout*, 961 F.2d 748, 755 (8th Cir.1992) ("Trying a defendant before a biased jury is akin to providing him no trial at all. It constitutes a fundamental defect in the trial mechanism itself."). Under *Eubanks*, the same holds true even if only one of the twelve jurors was biased. *Eubanks*, 591 F.2d at 517.

The majority characterizes counsel's decision to allow Miller to remain on the jury as simply a matter of tactical strategy. Defense counsel stated that he "was impressed with" Miller and thought Miller "gave a very candid answer." Simply because counsel gave a reason for his decision, however, does not render counsel's assistance effective. Counsel's trial tactic still cannot fall below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064. Here, a biased juror who is honest is still a biased juror. It is difficult to conceive of any tactical reason, let alone a reasonable tactical reason, why a defendant would want a juror, whether honest or not, who thought he was guilty even before the trial started.

In *United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir.1991), this circuit found ineffective assistance of counsel where the defense attorney conceded at closing argument that there was "no reasonable doubt" that the defendant "was the perpetrator of the bank robbery." The court stated:

> We cannot envision a situation more damaging to an accused than to have his own attorney tell the jury that there is no reasonable doubt that his client was the person who committed the conduct that constituted the crime charged in the indictment.

943 F.2d at 1075. Here, counsel allowed the impaneling of a juror who already believed that the defendant was the person who committed the crime. With respect to juror Miller, the prosecution did not have to prove beyond a reasonable doubt that the defendant was guilty.

The *Swanson* court also rejected characterizing counsel's actions as merely a matter of tactics. The court stated, "[w]e recognize that in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges." *Id.* at 1076. The court, however, found no reason why the attorney would concede that "no reasonable doubt existed" as to whether his client committed the crime. *Id.* Here, there is no reason why defense counsel would concede to having one juror who believed that the prosecution did not have to prove beyond a reasonable doubt his client's guilt.

## III.

Perhaps defense counsel in this case deliberately committed these errors so he could get a reversal on appeal if his client was found guilty. In *Swanson*, however, the court rejected the government's argument that attorneys can always intentionally engage in misconduct that would "guarantee a reversal on appeal in any case where the evidence of guilt is overwhelming." *Id.* at 1076. The court stated:

> There is no evidence in this record that Swanson conspired with his court appointed attorney to create reversible error in this matter.... Criminal defense lawyers are bound by the rules of professional conduct. If these rules are violated, counsel will expose himself to bar association discipline.

Here, there is nothing in the record to indicate that defense counsel seeded the record for reversal. Moreover, this is not a case where the evidence is overwhelming. On the contrary, the evidence was entirely circumstantial and, even with all of defense counsel's errors, the jury still initially deadlocked.

## CONCLUSION

This was a close case at trial, with the conviction resting solely on circumstantial evidence and the jury initially deadlocking. Counsel's errors in this case, especially his failure to strike a biased juror, directly affected the jury's determination of the defendant's guilt or innocence. When counsel's action allows the impaneling of a juror who believed the defendant to be guilty until proven innocent—in violation of the Sixth Amendment guarantee of an impartial jury—that conduct falls below an objective standard of reasonableness.

### ORDER

March 7, 1996

The panel has voted to deny appellant's petition for rehearing. Judge O'Scannlain voted to reject the suggestion for rehearing en banc and Judge Merhige so recommended.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

The panel hereby amends the opinion cited at 57 F.3d 836 (9th Cir. June 15, 1995) as follows: