95 F.3d 1159
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alejandro MARTINEZ-GARCIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luciano CABRERA-BERMEA, Defendant-Appellant.
 No. 95-50383, 95-50408.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 1996.
Decided Aug. 21, 1996.
 
 Before: WIGGINS, THOMPSON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Alejandro Martinez-Garcia ("M-G") and Luciano Cabrera-Bermea ("C-B"), both citizens of Mexico, entered the United States illegally on January 20, 1995, and were apprehended in the Tecate Mountain area near Dulzura, California. M-G and C-B were traveling with five to ten other individuals who ran off when confronted by a Border Patrol agent, leaving M-G and C-B behind with five large duffel bags filled with marijuana. They were convicted of possessing with the intent to distribute over one hundred kilograms of marijuana. M-G and C-B both challenge the sufficiency of the evidence supporting the guilty verdicts, and seek reversal based on the district court's refusal to give an "absence of flight" jury instruction. C-B seeks reversal based on the district court's allowing the government to re-cross-examine C-B after counsel for M-G's examination of C-B, even though C-B's counsel did not conduct re-direct examination of C-B. M-G argues that the district court erred in sentencing him based on the weight of the marijuana in all five bags instead of the weight of the marijuana in one bag.
 
 
 3
 * SUFFICIENCY OF THE EVIDENCE
 
 
 4
 When reviewing a challenge to the sufficiency of the evidence, this court determines whether, after reviewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); see also United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Jackson, 72 F.3d 1370, 1381 (9th Cir.1995), cert. denied, 116 S.Ct. 1546 (1996). The reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts. United States v. Goode, 814 F.2d 1353, 1355 (9th Cir.1987).
 
 
 5
 Under 21 U.S.C. § 841(a)(1) it is unlawful to knowingly possess with the intent to distribute a controlled substance. "The elements of this crime are (1) knowingly (2) possessing the substance (3) with the intent to distribute." United States v. Quintero-Barraza, 78 F.3d 1344, 1351 (9th Cir.1995). "In order for either defendant to be [directly] guilty of possession, [he] must have had the power to exercise dominion and control over the narcotics." United States v. Vazquez-Chan, 978 F.2d 546, 550 (9th Cir.1992). "A defendant is liable as an aider and abettor, and also thus as a principal, if he associates himself with the criminal venture, participates in it as in something that he wishes to bring about and seeks by his action to make it succeed." United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir.1993), cert. denied, 114 S.Ct. 359, and cert. denied, 114 S.Ct. 573 (1993). "The government must show 'not only that the defendant participated in the criminal venture, but that he intentionally assisted in the venture's illegal purpose." Vazquez-Chan, 978 F.2d at 552 (quoting United States v. Disla, 805 F.2d 1340, 1352 (9th Cir.1986)). "The aider and abettor's criminal intent may be inferred from the attendant facts and circumstances and need not be established by direct evidence." Arias-Villanueva, 998 F.2d at 1503.
 
 
 6
 The most incriminating evidence against Defendants in the case at hand is the fact that they were sitting and leaning on the duffel bags full of marijuana, both having at least "some idea," that the bags contained contraband. Thus, both Defendants were in direct physical contact with bags containing drugs.
 
 
 7
 There was also evidence in addition to the Defendants' mere proximity to the drugs that demonstrated their control over the drugs or complicity in drug activities. For example, Defendants were travelling through rugged hills at 2 a.m., in an area that is known for drug trafficking. Neither M-G nor C-B had any cash, identification, or documents in their possession. Although Defendants claim that they were lost, the evidence shows that they stayed with the group on the more rugged trails even after they could have travelled down several easier roads into town. If in fact Defendants were merely illegal aliens who were lost, it seems that they would have left the drug smugglers as soon as they could to avoid the risk of being caught with the drugs.
 
 
 8
 And, as explained by the Government, drug smugglers would probably be unlikely to allow strangers to travel along with them and their $315,000 worth of drugs. It is unlikely that C-B would be sitting on a bag and M-G leaning on a bag if they were merely tagging along and not part of the group. Similar arguments have been acknowledged by this court in other cases. See, e.g., United States v. Mesa-Faria, 53 F.3d 258, 260 (9th Cir.1995) (holding that it was implausible that a drug dealer would allow "an outsider to drive a car loaded with cocaine and heroin or sleep in an apartment containing drug paraphernalia and substantial amounts of cash"); United States v. Humphrey, 759 F.2d 743, 751 (9th Cir.1985) (holding that it was illogical that anyone who could not be trusted with knowledge of a criminal enterprise would have been allowed to travel across the ocean on a sailboat used to smuggle 3100 pounds of marijuana, making the whole ship reek of marijuana), cert. denied, 400 U.S. 917, 107 S.Ct. 1371 (1987). Also, M-G admitted that he carried the group's water bottle, which would imply that he was in fact part of the group, not merely a tag along.
 
 
 9
 Furthermore, there were inconsistencies in Defendants' stories regarding their knowledge of the contents of the bags. When apprehended by Agent Jackson, C-B volunteered that he did not know what was in the bags. At trial, however, he stated that he "had an idea" that the bag contained some type of drugs. After Agent Reidinger told C-B and M-G that the bags contained marijuana, they stated that they knew what was in the bags. There was also some inconsistency in C-B's and M-G's stories of where and when they began travelling together. Such inconsistencies in a defendant's story strengthen an inference of knowing possession. Quintero-Barraza, 78 F.3d at 1351 (noting inconsistencies in appellant's stories about previous trips to Las Vegas; "jury clearly chose to disbelieve [a]ppellant"); United States v. Martinez, 967 F.2d 1343, 1345 (9th Cir.1992) (defendant claimed guest was using bedroom where cocaine found; court found sufficient evidence based on fact that defendant resided in house where cocaine found and DEA agent found $2000 in pocket of defendant's shorts in bedroom where drugs found).
 
 
 10
 Plaintiffs rely on several Ninth Circuit cases to dispute the finding of "dominion and control" and the sufficiency of the evidence supporting their convictions. For example, in Vazquez-Chan, both defendants knew about the cocaine in the bedroom, but evidence showing that one of the defendants had touched the containers full of cocaine was insufficient to show her dominion and control over the cocaine. 976 F.2d at 551-53. In United States v. Wiseman, 25 F.3d 862 (9th Cir.1994), the court reversed a conviction for conspiracy to distribute marijuana. There, the court emphasized that the DEA agent had never heard of Wiseman and that the Wiseman's excuse that he was unknowingly driving a drug laden car because the actual drug transporter did not like to drive at night was "a quite rational innocent explanation for the defendant's conduct." Id. at 864-65. In United States v. Weaver, 594 F.2d 1272 (9th Cir.1979), the fact that a package containing cocaine was sticking out from under the passenger's seat was insufficient to show that he had dominion and control over the cocaine. Id. at 1274-75. We, however, find that the case at hand is distinguishable because Defendants were in direct contact with the duffle bags containing drugs at the very moment that they were apprehended. It is hard to imagine a more incriminating fact than finding someone in direct physical contact with the drugs. Although there were no blisters, callouses, or strap marks to indicate that Defendants had carried the bags, they could have participated in and furthered the criminal venture in many other ways, without carrying the bags. For example, M-G admitted that he carried the group's water bottle.
 
 
 11
 As noted above, in addition to Defendants' direct contact with the drugs, there was other evidence supporting the convictions and indicating that Defendants' stories were contradictory and unbelievable. As noted above, Defendants were travelling at 2 a.m., without identification. If they actually had been lost, they could have travelled down several paths into town, but they stayed with the group on the more rugged trails. Defendants gave conflicting stories as to how and when they joined up, and about whether they knew the duffel bags contained contraband. Furthermore, it is unlikely that drug smugglers would let strangers travel with them, sit on the drugs, and stay with the group even after Defendants could have gone their separate way on other trails.
 
 
 12
 Thus, viewing the evidence as a whole and in the light most favorable to the prosecution, there was sufficient evidence such that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319. The jury had the opportunity to hear all the evidence and the defense's side of the story. It is the province of the jury "to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." Goode, 814 F.2d at 1355. Here, "the jury clearly chose to disbelieve [Defendants], and this court is bound to respect the exclusive province of the jury to determine the credibility of witnesses." Quintero-Barraza, 78 F.3d at 1351 (reviewing for plain error, the court found sufficient evidence to sustain the conviction). Here, there is sufficient evidence casting doubt on the veracity of Defendants' explanations, and we find more than adequate evidence to support the verdict.
 
 II
 JURY INSTRUCTIONS
 
 13
 The issue whether the jury instructions, taken in their entirety, adequately cover a defense theory is a question of law, which is reviewed de novo. United States v. Duran, 59 F.3d 938, 940 (9th Cir.), cert. denied, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995). If there is a dispute over whether the required factual foundation for a particular instruction exists, the court reviews for abuse of discretion. Id.
 
 
 14
 M-G and C-B requested the district court to instruct the jury that M-G and C-B's failure to flee when confronted by Agent Jackson could "be considered by the jury as showing consciousness of innocence on the part of defendants." The district court properly rejected this requested instruction.
 
 
 15
 In United States v. Scott, 446 F.2d 509 (9th Cir.1971), the district court refused to instruct the jury that it could consider the defendants' "failure to flee from or resist arrest as a factor tending to prove his innocence." This court held that the district court properly refused to give the instruction, observing that "[e]xperimental observations do not give substantial assurance that either failure to flee or failure to resist arrest makes it more likely than not that the person arrested is innocent of the offense with which he is charged." Id. at 510. See also United States v. McQuarry, 726 F.2d 401, 402 (8th Cir.1984) (citing Scott in affirming district court's denial of instruction regarding defendant's failure to flee; defense counsel made argument about inferences to be drawn from absence of flight to jury); United States v. Telfaire, 469 F.2d 552, 558 (D.C.Cir.1972) ("While the inference from the absence of flight could properly be argued to the jury, we see no basis for requiring it to be elevated above any other inference that might be argued to the jury, and given the status of being enshrined in an instruction."). Defense counsel was able to argue to the jury its theory of the significance of C-B and M-G's failure to flee. We conclude, however, that the district court did not err in refusing to give an instruction regarding inferences that could be drawn from the absence of flight.
 
 III
 RE-CROSS EXAMINATION OF CABRERA-BERMEA
 
 16
 A district court's determination of the order of proof at trial is reviewed for abuse of discretion. Geders v. United States, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976); Fed.R.Evid. 611(a). C-B claims that the district court committed reversible error by allowing counsel for the government to re-cross examine C-B after counsel for M-G had cross-examined C-B and counsel for C-B indicated that he had no further questions. C-B provides no legal support for his position.
 
 
 17
 A district court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... make the interrogation and presentation effective for the ascertainment of truth." Fed.R.Evid. 611(a). Moreover, while cross-examination should generally be limited to matters explored on direct examination and matters affecting witness credibility, the district court may, "in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Fed.R.Evid. 611(b). "The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, he may determine generally the order in which parties will adduce proof." Geders, 425 U.S. at 86, 96 S.Ct. at 1334.
 
 
 18
 In United States v. Eniola, 893 F.2d 383, 389 (D.C.Cir.1990), after a new issue arose on cross-examination of a defendant by counsel for a codefendant, the court gave all counsel an opportunity to ask further questions. Only the prosecution chose to ask additional questions. Relying on Fed.R.Civ.P. 611(b) and Geders, the D.C. Circuit stated that defense counsel could not complain that the prosecution's questions were outside the scope of direct examination given that defense counsel was given the opportunity to re-direct, and held that the district court did not abuse its discretion in allowing the prosecution to re-cross. Id. at 390.
 
 
 19
 In the case at hand, counsel for C-B said that he had no further questions after counsel for M-G examined C-B. Counsel for C-B objected when the government was allowed to question C-B again. The government's examination was very brief, and addressed some questions specifically asked by counsel for M-G. After the conclusion of the government's questioning of C-B, counsel for C-B said, "I still don't have any more questions." Given the scope of the government's additional examination of C-B, and the opportunity that counsel for C-B had to question C-B again, the district court did not abuse its discretion in allowing the government to re-cross examine C-B after cross examination by counsel for M-G.
 
 IV
 SENTENCING
 
 20
 Interpretation and application of the Sentencing Guidelines is reviewed de novo, while factual findings during the sentencing phase are reviewed for clear error. United States v. Naranjo, 52 F.3d 245, 248 (9th Cir.1995).
 
 
 21
 M-G argues that the district court improperly sentenced him under U.S.S.G. § 2D1.1(c)(7), which provides for a base offense level of 26 for possessing between 100 KG and 400 KG of marijuana with the intent to distribute it. M-G argues that the district court should have found him responsible for at most one of the five duffle bags full of marijuana, and should have sentenced him under U.S.S.G. § 2D1.1(c)(11) for possessing between 20 KG and 40 KG of marijuana, for a base level of 18.
 
 
 22
 "The quantity of drugs for which a defendant is responsible is determined by the court at sentencing. The government has the burden of proving by a preponderance of the evidence the quantity of drugs for which a defendant is responsible." Naranjo, 52 F.3d at 248. U.S.S.G. § 1B1.3 indicates that the base offense level of a defendant involved in a jointly undertaken criminal activity will be determined by all the acts of the defendant and "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(1)(A), (B) (1994). Illustration (c)(8) of application note 2 indicates that where four individuals are hired by a supplier to backpack a quantity of marijuana from Mexico to the United States, and the individuals all receive their shipment from the supplier at the same time and proceed across the border together "for mutual assistance and protection," each defendant is accountable for the aggregate quantity of marijuana transferred by all four defendants. U.S.S.G. 1B1.3(1)(A), comment (n. 2, illust. (c)(8)). Had the defendants been hired and traveled separately, they would be responsible only for the quantity of marijuana they transported. Id.
 
 
 23
 As this example illustrates, in cases involving contraband (including controlled substances), the scope of the jointly undertaken criminal activity (and thus the accountability of the defendant for the contraband that was the object of that jointly undertaken activity) may depend upon whether, in the particular circumstances, the nature of the offense is more appropriately viewed as one jointly undertaken criminal activity or as a number of separate criminal activities.
 
 
 24
 Id. In United States v. Ogbuehi, 18 F.3d 807, 814 (9th Cir.1994), this court applied illustration (c)(8) to hold that a heroin smuggler was responsible for the total amount of heroin carried by himself and other heroin smugglers who were part of the same scheme and crossed the border with him.
 
 
 25
 Here, there is sufficient evidence under the preponderance of the evidence standard to find Defendants responsible for the marijuana in all five duffle bags. The district court specifically found during sentencing that the operation "was a jointly undertaken effort to try to transport a load of marijuana, not five separate duffle bags of marijuana, but one all together." Thus, illustration (c)(8) is directly applicable to this case, and the district court did not err in sentencing Defendants based on the weight of all the marijuana.
 
 
 26
 AFFIRMED.
 
 WIGGINS, Circuit Judge, dissenting:
 
 27
 The evidence in this case was sufficient to demonstrate that the Appellants probably were engaged in a drug smuggling operation when they were apprehended in the Tecate Mountain area near the California-Mexico border. The evidence, however, was not sufficient under our precedents, most notably United States v. Vasquez-Chan, 978 F.2d 546, 550 (9th Cir.1992), to prove beyond a reasonable doubt that the Appellants were guilty of knowingly possessing marijuana with the intent to distribute it. "Although we are loathe to reverse a trier of fact's conclusion that a defendant is guilty," United States v. Bautista-Avila, 6 F.3d 1360, 1363 (9th Cir.1993), I believe that the law compels such a reversal in this case.
 
 
 28
 "In order for either defendant to be guilty of possession, [he] must have had the power to exercise dominion and control over the narcotics." Vasquez-Chan, 978 F.2d at 550. The defendants knowledge that drugs were present, their "mere proximity to the drug, [their] presence on the property where it is located, and [their] association with the person who controls it are insufficient to support a conviction for possession." Id. To be guilty of aiding and abetting possession with the intent to distribute, and thus bear the same responsibility for the crime as a principal, "it is necessary that the defendant 'in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.' " Id. at 552 (quoting United States v. Sanchez-Mata, 925 F.2d 1166, 1169 (9th Cir.1991).
 
 
 29
 In Vasquez-Chan, we reversed the 21 U.S.C. § 841 conviction of two women who were temporarily residing in a house containing six hundred kilograms of cocaine. One woman, Vasquez, was employed as a caretaker and had lived in the house for three months, knew that cocaine was present, gave inconsistent reasons for her staying in the house, and carried a false passport. Messengers had delivered a large quantity of cocaine to the house on one occasion while she was present, and her name was one of two names listed on the electric bill for the house. The other woman, Gaxiola, also knew that cocaine was present and slept in the back bedroom where the cocaine was kept. Her fingerprints were on the barrel-like cocaine containers, including one fingerprint on the inside cover of one of the containers. However, other individuals clearly had control over the cocaine; neither woman's fingerprints were found on any of the mixing paraphernalia or the cocaine packages themselves, which had been in the house for only three days; neither woman's name arose during the extensive investigation of the case; there were no firearms present in the residence; and neither woman attempted to flee from the police or destroy evidence.
 
 
 30
 Though acknowledging that the women were "caught in 'extremely incriminating circumstances,' " id. at 551 (quoting United States v. Ramirez, 880 F.2d 236, 238 (9th Cir.1989)), we found that the women's "behavior 'was perfectly consistent with that of an innocent person having no stake or interest in drug transactions.' " Id. (quoting United States v. Penagos, 823 F.2d 346, 349 (9th Cir.1987)). The women's mere knowledge of the existence and location of the cocaine was insufficient to establish their dominion and control over the drugs. Id. We also found that the evidence was insufficient to permit a reasonable juror to conclude beyond a reasonable doubt that they aided and abetted the possession of others. Id. at 552-53.
 
 
 31
 The evidence in the case at bar is similar to, and, I believe, less indicative of guilt, than the evidence that was insufficient to uphold the convictions in Vasquez-Chan. Even assuming that the Appellants knew that drugs were present and that there were discrepancies in Appellants' stories, such evidence was insufficient to support the convictions in Vasquez-Chan. As in Vasquez-Chan, neither of the Appellants fingerprints were found on any of the drug packages themselves, M-G and C-B were not in possession of any firearms, and neither defendant attempted to flee or destroy evidence when apprehended. Moreover, in Vasquez-Chan there were several items of evidence that were substantially more incriminating than any evidence present in the case at bar. One defendant in Vasquez-Chan carried a false passport, while the other defendant slept in the room with the cocaine, and her fingerprints were found on six of the containers used to store the drugs, including one print on the inside cover of one of the containers. In the case at bar, there was no evidence of the Appellants fingerprints on the duffle bags that would indicate that they had carried or had any previous contact with the bags.
 
 
 32
 The majority distinguishes Vasquez-Chan by relying on the fact that the Appellants "were in direct contact with the duffle bags containing drugs at the very moment that they were apprehended." Majority Op. at 6. While I would agree that the Appellants were "caught in 'extremely incriminating circumstances,' " Vasquez-Chan, 978 F.2d at 551, such suspicious circumstances are insufficient to establish possession. Our test for possession does not allow the Appellants' proximity to, or even direct contact with, a package containing drugs to establish guilt, but rather requires the government to prove "dominion and control" over the drugs by the defendant. In Vasquez-Chan, Gaxiola had been in direct contact with the drums containing the drugs, as evidenced by her fingerprint on the inside of one of the drums. 976 F.2d at 551-53. This evidence established nothing more than her proximity to the drugs, and I am unconvinced that such mere proximity at the time of apprehension in the case at hand, though suspicious, is any more probative of dominion and control. Likewise, the sitting on a duffle bag full of drugs does not establish possession any more than sitting in the passenger's seat of a car while a package of drugs protrudes from under the seat, which was insufficient to establish possession in United States v. Weaver, 594 F.2d 1274-75 (9th Cir.1979). Both situations involve mere proximity to drugs, and without more evidence, are insufficient to establish dominion and control over the drugs. The majority's "direct contact ... at the very moment they were apprehended" distinction has no basis in our case law.
 
 
 33
 While I believe that Vasquez-Chan controls the outcome of this case, I feel compelled to address other arguments made by the majority. I agree with the majority that "drug smugglers would probably be unlikely to allow strangers to travel along with them and their $315,000 worth of drugs;" however, I believe that such a logical proposition, supplied by the government, but unsupported by any direct evidence, is insufficient in the case at bar to establish the Appellants' involvement in the drug smuggling operation. In United States v. Mesa-Farias, 53 F.3d 258 (9th Cir.1995), in finding sufficient evidence of a conspiracy to distribute cocaine, we concluded that "[a]bsent an agreement, [one co-conspirator] would not have allowed an outsider to drive a car loaded with cocaine and heroin or sleep in an apartment containing drug paraphernalia and substantial amounts of cash." In that case, however, we found that the defendant "had control of the car; he bought it, drove it, and was in close proximity to its keys when he was arrested." Id. at 259. Moreover, the drug ledger in the apartment contained Mesa-Farias' name, and his fingerprints were on a package of cocaine. Thus, in addition to the direct evidence of Mesa-Farias' involvement in the drug transactions, he had frequently exerted exclusive dominion and control over the car containing the drugs. Here, the Appellants' sitting and leaning on the drugs does not alone demonstrate such dominion and control. Each of the duffle bags full of drugs weighed over fifty pounds, and with five to ten other individuals in the immediate area of the duffle bags, neither of the Appellants could have simply run off with the duffle bag and control its movement like the defendant in Mesa-Farias could with the drugs in his car. The ability to sit on one of the duffle bags in no way demonstrates the ability to exert dominion and control over the drugs in the bags.
 
 
 34
 The inference of more than mere knowing presence was also much stronger in United States v. Humphrey, 759 F.2d 743 (9th Cir.1985), cert. denied, 480 U.S. 917, 107 S.Ct. 1371, 94 L.Ed.2d 686 (1987), in which a single cabin sailboat was filled with 3100 pounds of marijuana, the cabin reeked with the smell of marijuana, and the defendants had spent every day and night aboard the ship for an extended period of time. We held that "given the scale of the undertaking and the necessity for secrecy, 'no one would have been admitted to the enterprise who was not to be trusted completely with knowledge of its criminal character.' " Id. at 751 (quoting United States v. Allen, 675 F.2d 1373, 1384 (9th Cir.1990), cert. denied, 454 U.S. 833, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981)). Here, there is no evidence of any long term contact by the Appellants with the operation, or that the criminal character of the operation would have been so obvious that the individuals carrying the duffle bags full of marijuana would have been certain that the Appellants would know of their illegal activities. Moreover, the carrying of duffle bags full of drugs through the hills at the border of Mexico and the United States hardly seems like the type of sophisticated operation in which the participants would be resistant to any outside contact. While the street value of the drugs was over $300,000, the courier's monetary interest in successfully completing their task was certainly significantly less. In short, the government's explanation that "drug smugglers would probably be unlikely to allow strangers to travel along with them" is not sufficient to establish beyond a reasonable doubt that the Appellants had dominion and control over the drugs in question.
 
 
 35
 The government and the majority rely heavily on the inconsistencies in C-B's testimony at trial and C-B's and M-G's statements to the INS agents on the day they were apprehended. C-B's statement to Agent Jackson that he did not know what was in the bags is not inconsistent with his statement at trial that he "had an idea " that the bags contained some type of drugs. While the agents did tell Agent Reidinger that they knew the bags contained marijuana, the record reveals that the statement came after Agent Reidinger told them that the bags contained marijuana, Trial Transcript vol. III at 59, and Agent Reidinger acknowledged that the Appellants could have picked up the fact that there was marijuana in the bags when they were in custody at the site of their apprehension and "agents at the site of the arrest were screaming marijuana." Id. at 71. Any "inconsistencies" regarding the C-B's knowledge of the presence of the drugs were mainly matters of semantics and did not support a guilty verdict.
 
 
 36
 The inconsistency in C-B's and M-G's stories of where and when they began traveling together are also insufficient to demonstrate dominion and control. In Vasquez-Chan, we noted that one of the defendants had given inconsistent stories regarding her reasons for staying at the house. 978 F.2d at 550. That inconsistency, along with the other evidence that tended to support her conviction, however, was insufficient to establish dominion and control over the drugs. Id. at 551. See also, Bautista-Avila, 6 F.3d at 1363-64 & n. 1 (reversing convictions for conspiracy to distribute cocaine and possession with intent to distribute despite fact that defendants had "made various attempts apparently to conceal their identity, including traveling in a borrowed car and renting the Motel 6 room under an assumed name"). In United States v. Quintero-Barraza, 78 F.3d 1344 (9th Cir.1995), petition for cert. filed, --- U.S.L.W. ---- (June 5, 1996) (No. 95-9280), reviewing for plain error, we held that the inconsistencies in the defendant's stories strengthened the inference of knowing possession that was created by the defendants' driving a car "laden" with drugs. Id. at 1351. In United States v. Martinez, 967 F.2d 1343 (9th Cir.1992), the defendant lived in the house where cocaine was found, and a DEA agent found $2000 in the pocket of a defendant's shorts in the bedroom where the drugs were found in plain view. Id. at 1345. Thus, there was direct evidence, in addition his claims about the location of the shorts that contradicted the testimony of the DEA agent, to prove the defendant's knowing possession. In the case at bar, Agent Jackson did not observe the plaintiffs carrying the duffle bags. The agents looked for, but did not find, any evidence, such as callouses, blisters, or strap marks, to indicate that the Appellants had carried the duffle bags. While inconsistencies in a defendant's story can strengthen an inference of knowing possession, such inconsistencies cannot establish guilt where evidence of a defendant's power to exert dominion and control over drugs is otherwise lacking.
 
 
 37
 Neither M-G nor C-B had any cash, identification, or documents in their possession when they were apprehended. This is somewhat suspicious. However, in United States v. Sanchez-Mata, 925 F.2d 1166, 1168 (9th Cir.1991), and United States v. Lopez, 625 F.2d 889, 897 (9th Cir.1980), the fact that the defendants were apprehended with only $24 and $42 in cash cut against a finding of involvement with drug crimes, while the possession of large amounts of cash and weapons has cut in favor of guilt in the cases in which this court upheld convictions. See, e.g., United States v. Walker, 993 F.2d 196, 200 (9th Cir.), cert. denied, 510 U.S. 902, 114 S.Ct. 276, 126 L.Ed.2d 227 (1993); Martinez, 967 F.2d at 1345. While the Tecate Mountain area is known for drug trafficking, it is also known for significant illegal alien traffic, and illegal aliens such as C-B and M-G would be just as likely as drug smugglers to take a remote, rocky path into the U.S. to avoid detection.[1] Even though the government presented evidence that C-B and M-G would have crossed other paths that they could have taken down to the highway or a town, it is not illogical that they would stay with the group carrying the bags both to avoid detection and to avoid becoming lost again. "Where there is an innocent explanation for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one." Vasquez-Chan, 978 F.2d at 549; see also Bautista-Avila, 6 F.3d at 1363. I do not feel that sufficient evidence is present in the record to conclude beyond a reasonable doubt that the Appellants were engaged in a drug smuggling operation.
 
 
 38
 While acknowledging that there was no evidence that the Appellants carried any of the bags, the majority suggests that the Appellants could have forwarded the smuggling operation in other ways, such as through M-G's carrying of the water bottle for the group. Majority Op. at 6-7. Regardless of this fact's probative value with regard to M-G, it does not demonstrate that C-B participated in the drug smuggling operation. Moreover, while an individual is liable as an aider and abettor "if he associates himself with the criminal venture, participates in it as in something that he wishes to bring about and seeks by his action to make it succeed," United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir.1993), cert. denied, 114 S.Ct. 359, and cert. denied, 114 S.Ct. 573 (1993), even if both Appellants knew that there was marijuana in the bags, there was legally insufficient evidence in the record from which a trier of fact could conclude beyond a reasonable doubt that M-G or C-B sought to make the drug smuggling operation succeed. See Vasquez-Chan, 978 F.2d at 553.
 
 
 39
 In sum, I believe that the evidence was legally insufficient to establish the Appellants' dominion and control over the marijuana, or to establish their guilt as aiders and abettors of the drug smuggling operation. I respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 M-G would have a particular interest in avoiding apprehension in light of the fact that he had been convicted of a non-aggravated felony prior to an earlier deportation, which, given his criminal history, including the felony and three misdemeanors, would subject him to twenty-seven to thirty-three months imprisonment for violating 8 U.S.C. § 1326, reentry by a deported alien after commission of a felony