107 F.3d 18
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robbin McLAURIN, aka Robbin Nelson, Defendant-Appellant.
 No. 96-10057.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 10, 1996.
Decided Jan. 27, 1997.
As Amended on Denial of Rehearing March 5, 1997.
 
 Before: FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robbin McLaurin ("McLaurin") appeals his conviction for one count of conspiracy (18 U.S.C. § 371) and thirty-five counts of mail fraud (18 U.S.C. § 1341(2)). We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 
 3
 * INEFFECTIVE ASSISTANCE OF COUNSEL
 
 
 4
 Ineffective assistance of counsel claims are ordinarily brought in collateral habeas proceedings, but "where the record adequately sets forth the facts giving rise to a claim of ineffective assistance of counsel ... the Court will consider the defendant's argument on direct appeal." United States v. Quintero-Barraza, 78 F.3d 1344, 1347 (9th Cir.1995) (internal quotation omitted), cert. denied, 117 S.Ct. 135 (1996). We find the record sufficiently developed here and therefore exercise our discretion to reach McLaurin's arguments regarding the ineffective assistance of counsel on direct appeal. We review counsel's effectiveness de novo. Id.
 
 
 5
 In making the claim that his counsel during the criminal trial was ineffective, McLaurin must demonstrate (1) that his counsel's actions were outside the wide range of professionally competent assistance, and (2) that McLaurin was prejudiced by reason of his counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-90 (1984); United States v. Benlian, 63 F.3d 824, 826 (9th Cir.1995). Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. None of the instances of unreasonable professional assistance alleged by McLaurin, taken separately or as a whole, rises to the level of ineffective assistance of counsel.
 
 A. Failure to Request a Continuance
 
 6
 At least ten days before trial, the district court became aware of the impending substitution of counsel and notified McLaurin and his attorneys that the court would not allow a substitution unless the new attorney was prepared to proceed with trial as scheduled. On the morning of trial, the district court again verified that McLaurin's new counsel was prepared for the trial and that McLaurin had fully consulted with both his previous attorney and his new counsel, and was prepared to proceed to trial with his new attorney. The district court would not have allowed the substitution of counsel had there not been assurances that a continuance would not be necessary.
 
 
 7
 McLaurin fails to show that his new counsel needed a continuance. See United States v. Rude, 88 F.3d 1538, 1550 (9th Cir.1996) (upholding the denial of a motion for a continuance absent a showing of need or prejudice), cert. denied, No. 96-780, 1997 WL 2722 (U.S. Jan. 6, 1997).
 
 B. Failure to Object to Hearsay
 
 8
 McLaurin argues that his counsel demonstrated his ineffectiveness by failing to object to repeated instances of hearsay elicited during the direct examination of certain Government witnesses. McLaurin cites eighteen examples, but only discusses four examples in his appellate brief. Some of the examples appear to include hearsay statements that, had McLaurin's counsel objected to them, would have been excluded by the district court. However, McLaurin has failed to show and we do not find that any of these examples prejudiced his case or fell outside the wide range of reasonable professional assistance.
 
 
 9
 C. Failure to Object to Improper Impeachment
 
 
 10
 McLaurin argues that his counsel's representation was ineffective because his attorney failed to object during two instances where the Government engaged in improper impeachment. In both instances, the opposing attorney's decision not to object fell within the wide range of tactical discretion included in the scope of reasonable professional assistance. Neither example cited by McLaurin supports the conclusion that his counsel was ineffective.
 
 
 11
 D. Failure to Object to the Admission of the Gun
 
 
 12
 Although the gun had only marginal relevance to issues raised during the trial, we conclude that the failure of McLaurin's attorney to object to its admission did not fall outside the wide range of reasonable professional assistance and, in any event, the admission of the gun did not prejudice McLaurin's defense.
 
 
 13
 Before the Government offered the gun into evidence, there was testimony from one of McLaurin's associates that he delivered large amounts of money to McLaurin on a regular basis. There was also evidence from other individuals that McLaurin conducted most of his dealings in cash. Therefore, the gun and the circumstances surrounding its seizure were relevant to support the inference that McLaurin carried the gun in order to protect the large amounts of cash that he transported, thus corroborating the testimony of his associates.
 
 
 14
 Further, in light of the overwhelming evidence of McLaurin's guilt and the fact that the Government did not discuss the existence of the gun during closing arguments, the admission of the gun did not prejudice McLaurin's defense. Therefore, McLaurin is unable to satisfy either requirement for demonstrating that his attorney's failure to object to the gun's admission into evidence rendered his representation ineffective.
 
 
 15
 E. Failure to Object to Leading Rehabilitation
 
 
 16
 Few of the allegedly improper questions cited by McLaurin are actually leading questions. Most of the targeted questions asked by the Government during redirect were foundational and led to other, non-leading questions. Questions that were potentially objectionable did not substantially expand or alter earlier testimony elicited through proper, non-leading questions. See Miller v. Fairchild Indus., Inc., 885 F.2d 498, 514-15 (9th Cir.1989), cert. denied, 494 U.S. 1056 (1990). Therefore, McLaurin has failed to demonstrate that his attorney was ineffective in failing to object to these questions.
 
 
 17
 F. Failure to Make a Rule 29(b) Motion for Acquittal
 
 
 18
 We have held that the failure to make a Rule 29(b) motion for acquittal does not constitute the ineffective assistance of counsel. In Quintero-Barraza, we held that the failure to renew a motion for acquittal under Rule 29(b) "does not rise to the level of Strickland ineffectiveness" even though the failure "subjected any appellate challenge to the sufficiency of the evidence to a lower standard of review." Quintero-Barraza, 78 F.3d at 1351. Reaching the same conclusion by slightly different reasoning, we have also held that the failure to make a Rule 29(b) motion was not ineffective assistance of counsel because the crimes charged "were supported by sufficient evidence." United States v. Feldman, 853 F.2d 648, 665-66 (9th Cir.1988), cert. denied, 489 U.S. 1030 (1989). Under either analysis, the fact that McLaurin's attorney failed to make a Rule 29(b) motion did not constitute ineffective assistance of counsel.[1]
 
 G. McLaurin's Direct Examination
 
 19
 McLaurin argues that the initial questions asked of him on direct examination regarding his attorney's advice not to testify left the jury with the impression that his attorney did not believe what his client was about to say on the stand. However, the jury could just as well have inferred that McLaurin's attorney advised his client not to testify because he did not believe that his testimony was necessary to secure an acquittal. The district court sustained the Government's objections to these questions and instructed the jury to disregard them. Though in retrospect it was perhaps unwise to begin McLaurin's direct examination with this series of questions, it did not constitute ineffective assistance of counsel to ask them.
 
 H. McLaurin's Cross-Examination
 
 20
 Other than McLaurin's statement to the district court during a break in his testimony at the time the confusion arose, there is no evidence in the record that he received erroneous advice from his attorney before he took the stand as to the issues that would be subject to cross-examination. McLaurin concedes that the record is silent concerning the specific advice that McLaurin's attorney provided him, and the attorney expressed some surprise to the district court at the time that his client was refusing to answer questions from the Government concerning subjects that were raised on direct examination. For the purposes of this decision, however, we will assume that McLaurin was erroneously advised by his attorney regarding the subjects that the Government could raise on cross-examination.
 
 
 21
 Turning to the prejudice prong of the ineffectiveness analysis, we conclude that the erroneous advice, if given, did not raise a reasonable probability that, but for this unprofessional error, the result of the proceeding would have been different. On appeal, both McLaurin and the Government have characterized the trial as a credibility contest between the witnesses from both sides. McLaurin's defense at trial was that his associates were the real masterminds behind the fraudulent telemarketing scheme and that McLaurin lacked knowledge regarding the nature of those activities.
 
 
 22
 At trial, all of McLaurin's associates testified that he had direct knowledge and control of all of the fraudulent activities engaged in by his associates in the telemarketing solicitation business. If McLaurin had not testified, there would have been no evidentiary basis in the record from which his attorney could argue to the jury that he lacked knowledge of the nature of the telemarketing organization. If his attorney had correctly advised him that he could be cross-examined on subjects from his past that related to his credibility, McLaurin's only other choice would have been not to testify, in which case he would have had no defense at all. Therefore, regardless of the advice McLaurin's attorney gave him concerning the subjects that could be raised on cross-examination, McLaurin would have had to testify in order to sustain his defense that he lacked knowledge of the organization and would have been cross-examined on issues relating to his credibility in either event.
 
 II
 HYBRID REPRESENTATION
 
 23
 McLaurin does not have a constitutional right to hybrid representation at trial, United States v. Kienenberger, 13 F.3d 1354, 1356 (9th Cir.1994), and had "no absolute right to serve as co-counsel after electing to be represented by an attorney," United States v. Olano, 62 F.3d 1180, 1193 (9th Cir.1995), cert. denied, 117 S.Ct. 303 (1996). We held in Olano that "[the defendant] has not demonstrated ... why he could not have provided his attorney with the benefit of this expertise prior to or during trial, without himself acting as co-counsel.... He thus has not established any 'special need' requiring the district court to permit him to participate at trial." Id. at 1193.
 
 
 24
 McLaurin has also failed to make such a showing. The district court expressly allowed McLaurin whatever time he required before and during the examination of a witness to consult with his attorney and suggest avenues of questioning or specific questions themselves that his attorney might have overlooked. McLaurin never expressed any difficulty communicating with his attorney, but merely disagreed occasionally concerning the style and manner of his attorney's cross-examination. This does not demonstrate a "special need" for McLaurin to act as co-counsel. The district court did not abuse its discretion in denying McLaurin's request.
 
 III
 EVIDENTIARY RULINGS
 
 25
 McLaurin argues that several district court rulings on the admissibility of evidence were erroneous. We review a district court's evidentiary rulings during trial for an abuse of discretion. United States v. Sarno, 73 F.3d 1470, 1488 (9th Cir.1995), cert. denied, 116 S.Ct. 2554 (1996); United States v. Vgeri, 51 F.3d 876, 880 (9th Cir.1995). If the defendant fails to object at trial, Rule 52(b) of the Federal Rules of Criminal Procedure places the burden on the defendant to show that the error was "plain" and affected "substantial rights." United States v. Throckmorton, 87 F.3d 1069, 1073 (9th Cir.1996), petition for cert. filed, No. 96-7194 (U.S. Dec. 16, 1996). The district court did not commit error in any of the challenged evidentiary rulings.
 
 
 26
 A. Exclusion of McLaurin's Rebuttal Evidence
 
 
 27
 McLaurin argues that the district court improperly prevented him from calling a witness during rebuttal who would have testified that McLaurin's activities in conducting certain telemarketing firms were legal. This testimony would have responded to testimony by an FBI agent regarding McLaurin's prior business activity in the telemarketing industry. The district court prevented McLaurin from calling this rebuttal witness because the only information he would testify to concerned collateral matters that did not directly relate to the charges involved in the present case.
 
 
 28
 As a compromise, the district court delivered a limiting instruction to the jury in order to negate any weight the jury might place on the collateral portion of the FBI agent's testimony. McLaurin's attorney agreed that a special limiting instruction would be a satisfactory substitute for calling an extra witness, and the instruction was delivered at the end of the trial. McLaurin's attempt on appeal to portray this decision as an abuse of discretion lacks merit. The district court did not abuse its discretion in formulating a compromise that both parties agreed was satisfactory.
 
 B. Use of the Loan Application
 
 29
 The loan application related directly to McLaurin's credibility, which was at issue, and thus was admissible under Rule 608(b) of the Federal Rules of Evidence because the false statements constituted specific instances concerning McLaurin's character for truthfulness. The district court determined that the application's probative value was not substantially outweighed by the danger of prejudice to McLaurin, and the jury was specifically instructed to consider the Government's line of questioning only "to the extent it bears upon Mr. McLaurin's credibility, his believability as a witness." The district court did not abuse its discretion here.
 
 C. Admission of the Gun
 
 30
 McLaurin argues that the district court committed error by admitting the gun that was recovered during McLaurin's arrest. Because McLaurin never objected to the admission of the gun at trial, we review the admission for plain error. Throckmorton, 87 F.3d at 1073. Plain error is invoked to prevent a miscarriage of justice or to preserve the integrity and the reputation of the judicial process. United States v. Olano, 507 U.S. 725, 736 (1993). "In applying the plain error standard we consider all circumstances at trial including the strength of the evidence against the defendant." United States v. Campbell, 42 F.3d 1199, 1204 (9th Cir.1994) (internal quotation omitted), cert. denied, 115 S.Ct. 1814 (1995). As discussed above, supra part I.D, the evidence against McLaurin was substantial. There was no plain error committed by the district court here.
 
 IV
 CALCULATION OF INTENDED LOSS
 
 31
 We review the district court's interpretation and application of the sentencing guidelines de novo. United States v. Shrestha, 86 F.3d 935, 938 (9th Cir.1996); United States v. Chastain, 84 F.3d 321, 324 (9th Cir.1996). We review the district court's factual findings in the sentencing phase concerning the amount of loss for clear error. United States v. Salemo, 81 F.3d 1453, 1463 (9th Cir.), cert. denied, 117 S.Ct. 436 (1996). The district court did not commit error in the calculation of McLaurin's offense level.
 
 
 32
 Section 2F1.1(b)(1) of the sentencing guidelines provides for increases in the offense level for crimes involving fraud and deceit, depending on the amount of loss. If the loss exceeds $350,000.00, the base offense level is increased by nine levels. U.S.S.G. § 2F1.1(b)(1)(J). If the loss exceeds $200,000.00, the base offense level is increased by eight levels. U.S.S.G. § 2F1.1(b)(1)(I). In calculating the offense level at sentencing, the district court is entitled to account for the amount of the "intended loss" even if it exceeds the amount of the actual loss to the victims. United States v. Joetzki, 952 F.2d 1090, 1096 (9th Cir.1991).
 
 
 33
 At sentencing, the Government supplied a detailed and itemized list compiled by the FBI that included a tabulation of the victims' names, the check numbers, and the amount of each check, setting the total amount of the victims' checks sent to McLaurin's fraudulent telemarketing business at $409,413.35. The amount of money actually received from the checks for purposes of restitution totaled $321,445.13.
 
 
 34
 To determine McLaurin's offense level, the district court began its calculation of the intended loss at the $409,413.35 total provided by the FBI. The court subtracted from that amount the $29,932.50 that was paid to the American Distribution Center, a side deal between two of McLaurin's associates with which McLaurin had no association. That subtraction resulted in an adjusted intended loss of $379,480.85. This amount includes checks that either were not cashed or were returned for insufficient funds. These checks can be included in the intended loss to the victims in calculating McLaurin's offense level. This final amount is greater than $350,000.00; the district court did not commit error in enhancing McLaurin's offense level by nine.[2]
 
 CONCLUSION
 
 35
 After carefully reviewing all of the arguments McLaurin has raised in this appeal, we conclude that he was not denied the effective assistance of counsel and the district court committed no reversible error. Therefore, the conviction and sentence are AFFIRMED.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 McLaurin does not challenge the sufficiency of the evidence to support his conviction in this appeal
 
 
 [2]
 McLaurin also argues that the district court improperly enhanced his offense level for misrepresentations that his telemarketing firm was acting on behalf of a charitable organization. There was ample evidence in the record to support the district court's conclusion that McLaurin's telemarketing scheme involved the misrepresentation of charitable purposes in order to solicit funds. This evidence justifies the district court's decision to enhance McLaurin's offense level for his use of false pretenses involving charitable causes