OPINION
BEA, Circuit Judge:
We must today decide whether defense counsel’s failure in 1983 to object to a California prosecutor’s allegedly group bias-based peremptory challenges constituted ineffective assistance of counsel, which ineffectiveness now requires a grant of federal habeas relief under the Sixth Amendment to the U.S. Constitution.
During the murder trial of Constantino Carrera, defense counsel failed to object to the prosecutor’s use of peremptory challenges to strike six Hispanic[1] venirepersons. Carrera appeals the district court’s denial of his petition for a writ of habeas corpus based on defense counsel’s claimed ineffective assistance of counsel.
We affirm the district court’s denial of Carrera’s ineffective assistance of counsel claim.[2] Petitioner failed to present evidence sufficient to overcome the strong presumption that counsel’s performance was reasonable, as set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[3]
I
Carrera, a Hispanic, was tried and convicted in 1983 for the robbery and first degree murder of Jack and Carol Hayes, managers of the Imperial 400 Motel in Mojave, California. Carrera was sentenced to death. The death sentence has since been invalidated.
During jury selection, the prosecutor used peremptory challenges to strike six qualified[4] Hispanic prospective jurors. Two Hispanic jurors did sit on Carrera’s jury; an additional Hispanic person served as an alternate juror. The prosecutor struck eleven out of forty-one similarly qualified white, non-Hispanic prospective *942 jurors. The victims — the Hayes — were White, non-Hispanics. Defense counsel did not object. The Supreme Court of California affirmed Carrera’s conviction. Carrera’s state habeas petitions were denied by the Supreme Court of California without opinion.
Carrera filed an initial petition for habeas corpus in federal district court on July 31, 1990. The district court denied Carr-era’s ineffective assistance of counsel claim in an order on March 11, 2008.[5]
II
We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291, 2253. This court reviews de novo a district court’s decision to deny a petition for a writ of habeas corpus and reviews for clear error a district court’s findings of fact. Robinson v. Schriro, 595 F.3d 1086, 1099 (9th Cir.2010).
The Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”) does not apply because Carrera filed his federal habeas petition before AEDPA’s effective date; thus, pre-AEDPA law applies. See id. Under pre-AEDPA law, this court owes no deference to the state court’s resolution of questions of law or mixed questions of law and fact. Id. Wfiiether counsel rendered ineffective assistance of counsel is a mixed question of law and fact which we review de novo. Id. However, a state court’s findings of fact are “entitled to a presumption of correctness unless they are not fairly supported by the record.” Clark v. Brown, 450 F.3d 898, 904 (9th Cir.2006) (internal quotation marks and citation omitted).
III
The Sixth Amendment entitles criminal defendants to the “effective assistance of counsel.” Strickland, 466 U.S. at 686, 104 S.Ct. 2052 (internal quotation marks omitted). The Sixth Amendment’s right to counsel has been incorporated into the Fourteenth Amendment, so as to apply to the states. Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). To establish ineffective assistance of counsel, a defendant must prove: (1) deficient performance — that is, his counsel’s performance “fell below an objective standard of reasonableness,” Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052; and (2) prejudice — that is, “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different,” id. at 694, 104 S.Ct. 2052. “If we conclude that the petitioner fails to satisfy one of the Strickland prongs, we need not address the other.” Stanley v. Schriro, 598 F.3d 612, 619 (9th Cir.2010) (citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052). Because Carrera failed to carry his burden in proving his defense counsel’s performance was deficient, we need not and do not address the prejudice prong.[6]
“Surmounting Strickland’s high bar is never an easy task.” Padilla v. Kentucky, — U.S. -, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). To prove deficient performance, a defendant must prove that his counsel’s performance “fell *943 below an objective standard of reasonableness.” Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. In evaluating whether counsel’s performance was deficient, “judicial scrutiny of counsel’s performance must be highly deferential.” Id. at 689, 104 S.Ct. 2052. The Court further stated:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” See Michel v. Louisiana, [350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.
Id. Thus, Strickland places the burden on the defendant to overcome the “strong presumption” that counsel’s performance was within the “wide range of reasonable professional assistance” and might be considered “sound trial strategy.”
Carrera’s defense counsel’s performance must be judged based on the law and prevailing legal standards as they existed at his trial in 1983. Id. at 690, 104 S.Ct. 2052 (“[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel’s challenged conduct on the facts of the particular case, viewed as of the time of counsel’s conduct.”). Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which held that the use of peremptory challenges to exclude jurors based solely on their race is a violation of the Equal Protection Clause of the Fourteenth Amendment, was not decided until three years after Carr-era’s trial. Although Batson applies retroactively to cases on direct review, Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), it does not apply retroactively on federal habeas review, Allen v. Hardy, 478 U.S. 255, 260, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). Thus, Batson is inapplicable for the purpose of determining whether trial counsel’s performance in 1983 was deficient. Rather, the relevant question here is whether in California[7] in 1983 “[defense] counsel’s representation fell below an objective standard of reasonableness” when she failed to make a Wheeler[8] motion to discharge the venire because of the prosecutor’s claimed group-based peremptory challenges. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052.
In People v. Wheeler, the Supreme Court of California held that “the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under ... the California Constitution.” 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, 761-62 (1978). Under Wheeler, courts begin with the presumption that “a party exercising a peremptory challenge is doing so on a constitutionally permissible ground.” Id., 148 *944 Cal.Rptr. 890, 583 P.2d at 762. A party who believes “his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone” must first “make a prima facie case of such discrimination to the satisfaction of the court.” Id., 148 Cal.Rptr. 890, 583 P.2d at 764. The challenging party “must establish that the persons excluded are members of a cognizable group” and “show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias.” Id. “[T]he party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group.” Id. Also relevant are (1) whether the defendant is a member of the excluded group, and (2) whether the victim is a member of the group to which the majority of the remaining jurors belong. Id. “If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone.” Id., 148 Cal.Rptr. 890, 583 P.2d at 764-65. “[T]he allegedly offending party must satisfy the court that he exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses....” Id., 148 Cal.Rptr. 890, 583 P.2d at 765. “If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is rebutted.” Id. Thus, a different venire is drawn and the jury selection process begins anew. Id.
IV
Carrera contends his defense counsel was ineffective in failing to make a Wheeler motion in response to the prosecutor’s peremptory challenges against six potential Hispanic jurors. Carrera must overcome the “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. We emphasize that the initial question is not whether defense counsel would have succeeded had a Wheeler motion been made[9] — a reasonable attorney is not required to make every potentially meritorious motion. Instead, the question is whether reasonable counsel might[10] have declined to make a Wheeler motion under these circumstances. To this question, we answer in the affirmative.
Carrera has not carried his burden to prove defense counsel’s performance was deficient. During state habeas proceedings, defense counsel was asked: “Was there any strategic reason why a Wheeler motion was not made as to any or all of these seven prospective jurors [with Spanish surnames]?”[11] In response, defense counsel’s declaration — executed over four years after jury selection took place in Carrera’s trial — stated: “I don’t know why *945 at this time.”[12] But, a review of the voir dire transcript demonstrates that, as to five of the six stricken Hispanic jurors, Carrera’s counsel had good reason not to bring a Wheeler motion. Further, although the transcript does not reveal a specific justification for striking the sixth juror, it implies one; further, Carrera has failed to provide sufficient evidence to overcome the strong presumption in favor of counsel’s conduct being reasonable.[13] Accordingly, Carrera has not overcome the presumption that his counsel performed competently.

1. Juror Estrada

Juror Estrada was defense counsel’s residential letter carrier. This personal acquaintance provided the prosecution with a valid reason to challenge Estrada, and a Wheeler motion by Carr-era’s counsel would have been pointless. Defense counsel’s second declaration on state habeas so establishes.

2. Juror Garcia

Garcia initially told the trial judge she could not vote for the death penalty. This response provided the prosecution with a valid reason to remove this juror in a possible death penalty case; in California, the jury, not the judge, then and now decides whether to impose the death penalty. A Wheeler motion by defense counsel as to Garcia would have been futile.
In his comparative analysis,[14] Carrera contends that Garcia’s equivocal answer as to whether she could vote for the death penalty was a pretext, as other non-Hispanic jurors gave similarly equivocal answers but were not stricken. Thomas Yale, Juror #9, was asked: “Could you consider the imposition of the death penalty?” Yale responded, “I believe I could, sir, yes.” To the question “And do you believe in the death penalty, sir?” he answered “I don’t like to take another life, but I guess under certain circumstances it is probably justified.” Vincent Colaustro, an alternate juror, stated he was not opposed to the death penalty philosophically. To the question “Could you vote for [the death penalty]?” he responded, “That is a tough question, a very tough question,” and a “tough decision.” When asked “Some murderers may warrant the death penalty, don’t you think?” Colaustro answered “It is hard for me to judge.” The prosecutor accepted both Yale and Colaustro.
Carrera contends the answers from Yale and Colaustro are no less equivocal than Garcia’s, and thus any contention that the prosecutor struck Garcia based on her equivocal answer was a pretext for group bias. This contention fails on the merits. *946 Garcia was asked whether she could vote for the death penalty if she was “convinced that the death penalty should be imposed,” and Garcia answered “No.” When asked whether she could vote for the death penalty under any circumstances, she answered “No, I don’t think so.” When the judge asked whether Garcia could “think of a case where the crime for instance is so vicious that the death penalty should be imposed,” Garcia finally answered “Well, yeah, in that case, yeah.”
Garcia’s answers were more unfavorable to the prosecution than either Yale’s or Colaustro’s answers. The prosecution would want to remove any juror who was unsure as to the death penalty; thus it was reasonable for defense counsel to decline to make a futile Wheeler motion.

3. Juror Celedón

Celedón, like Garcia, expressed doubt about being able to vote for the death penalty. To the question “[IJf after you have heard everything you feel the death penalty is the proper penalty, could you vote that way?” Celedón responded “I don’t know.” Moreover, as noted by the district court, Celedón seemed “bitter” about her presence on the venire, stating she had her mind on her work with her special education students. Doubt as to the use of the death penalty alone is sufficient to support a peremptory challenge; an attitude resentful of jury service also supports a peremptory challenge. Defense counsel could reasonably have believed that a Wheeler motion would fail.[15]

k- Juror Hernandez

Hernandez expressed a strong view towards the death penalty, responding explicitly and unequivocally that she believed in the death penalty. Also, Hernandez worked for the probation department. Thus, even if defense counsel subjectively believed the prosecution’s peremptory challenge against Hernandez was based on group bias, defense counsel had good reason to allow a pro-death penalty juror to be removed from the jury.
In his comparative analysis as to Juror Hernandez, Carrera does not actually compare Hernandez’s questions and answers to any other juror. Instead, Carrera contends that Hernandez’s role as a “group counselor housekeeper” in the Kern County probation department was a pretext for striking Hernandez based on her Hispanic surname. Even accepting this contention as true, and assuming defense counsel reasonably believed Hernandez was stricken for discriminatory reasons, this does not prove defense counsel performed deficiently in not bringing a Wheeler motion. As Carrera himself recognizes, Hernandez affirmatively declared her support for the death penalty — defense counsel would be happy to see Hernandez go. Thus, Carr-era has not carried his burden in proving that any reasonable criminal defense attorney would have made a Wheeler motion under these circumstances.

5. Juror Carrillo

Carrillo, like Hernandez, expressed strong views in favor of the use of the death penalty. Defense counsel would not *947 be sad to see Carrillo go, and thus was reasonable in not advancing a Wheeler motion.
In his comparative juror analysis, Carr-era notes that the district court stated there were two potential group bias-neutral reasons for challenging Carrillo: (1) the arrest of Carrillo’s son at age 13-14, or (2) the prosecutor’s alleged doubts about Carrillo’s ability to vote for the death penalty. Carrera contends neither of these reasons could support a group bias-neutral peremptory challenge.
As to her son’s legal problems, Carrera accurately points to two other non-Hispanic jurors whose children had a criminal history, both of whom the prosecutor accepted. As to Carrillo’s supposed inability to vote for the death penalty, Carrera contends “there was no evidence in the record to support” Carrillo’s alleged opposition to the death penalty. But this actually proves that defense counsel was not ineffective in failing to raise a Wheeler motion. Even if defense counsel believed the prosecutor’s peremptory challenge was based on Carrillo being Hispanic, Carrera cannot show that counsel acted incompetently by failing to raise a Wheeler motion in response to a peremptory challenge of an unfavorable, pro-death penalty juror.

6. Juror Martinez

The sixth stricken Hispanic juror, Martinez, did not say anything particularly favorable to either the prosecution or the defense. The district court found that Martinez’s disability, and the 30-mile drive from his home to the courthouse, “could give rise to concern over daily punctuality.”
In his comparative analysis, Carrera contends these purported group bias-neutral reasons could not have formed the basis of the prosecutor’s peremptory challenge. Although Martinez was never questioned about the type of disability to which he was subject, or how it would affect his potential service as a juror, he did state that he had been a truck driver, but had been disabled from that work since 1976 — for 7 years by the time of trial. Martinez’s commute from Delano to court in Fresno was 30 miles. Another potential juror (Juror Allen) had a longer commute than Martinez and said the commute would “cause a problem,” whereas Martinez said his commute would not be difficult. There was nothing to show Allen was in any way disabled. Allen became a juror in Carrera’s trial.
Carrera contends that had a Wheeler motion been made, this evidence would tend to suggest the prosecutor’s peremptory was based on group bias. However, the question we face is one step removed: Was defense counsel deficient to either (1) believe a Wheeler motion would fail because the prosecutor could come up with a race-neutral reason to challenge Martinez, or (2) decide she was happy the prosecutor struck Juror Martinez?
Martinez presented with a combination of facts which imply a race-neutral reason for the prosecutor to have excused him. First, Martinez had a long-standing disability, of seven years’ duration. Second, this disability had invalidated him from his work — truck driving. Third, his commute from Delano to the Fresno courthouse was 30 miles long. The description of this disability may have been obvious in the courtroom, but was left undescribed in the record. One explanation that comes to mind for the prosecutor’s decision to excuse Martinez: the prosecutor wanted to ingratiate himself with the remaining jurors by relieving the disabled Martinez from sitting on a long jury trial.
However, this does not end the inquiry. There are reasons for striking a potential *948 juror that would not show up in a trial transcript. See, e.g., Rice v. Collins, 546 U.S. 333, 341, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) (holding that “eye rolling” and “youthfulness” were permissible grounds for exercising a peremptory challenge). Any number of reasons for striking Juror Martinez may have been apparent to every person in the courtroom, yet unavailable to one reading the transcript of voir dire. But it is Carrera who has the burden of showing defense counsel was deficient in failing to bring a Wheeler motion in response to the prosecutor’s peremptories. On this record, Carrera has failed to carry his burden.
Indeed, during state habeas proceedings, the prosecutor declared there were race bias-neutral reasons for striking each Hispanic juror. The prosecutor declared that, although, understandably, he could not remember nearly five years later his reason for striking each juror he had “specific reasons justifying each of [his] challenges not based on race.” The prosecutor further declared:
I believed the crimes Constantino Carr-era committed were so brutal and senseless that any responsible juror would hold Carrera responsible if I proved my case. I thought responsible Hispanic jurors would be very good jurors, as they would not tolerate such lawless, senseless, brutal and vicious conduct and would be particularly interested in holding Carrera responsible for his actions.
Specifically, the prosecutor declared: “I know I didn’t kick off any jurors just because they were Hispanic. Race was never a cause for me to excuse any juror.” This declaration provides some evidence of the fact that — although five years later he could not detail them — the prosecutor had group bias-neutral reasons for his exercising peremptory challenges against each of the six Hispanic jurors, and therefore that defense counsel was reasonable in not making a Wheeler motion.
Further, this court’s jurisprudence demonstrates the high level of deference given to counsel’s decisions during jury selection. In United States v. Quintero-Barraza, 78 F.3d 1344 (9th Cir.1995), Quintero-Barraza contended, on direct appeal, that counsel was ineffective for failing to strike a potentially biased juror. Id. at 1349. During voir dire in Quintero-Barraza’s criminal trial, prospective juror David Miller, a criminal justice student, stated his belief that one is guilty until proven innocent. Id. He also stated that it would be “difficult” for him to be impartial. Id. Counsel did not strike Miller; instead, he expressed his admiration for Miller’s truthfulness: “I was impressed with him. I thought he gave a very candid answer.” Id. at 1349 & n. 4. This court held:
Counsel’s actions in this regard pose a more difficult question for this Court. It is manifest, however, that he was making a tactical decision in declining to strike Miller. Counsel appears to have concluded that because Miller was honest about his pretrial views, he would also honestly apply the law as outlined in the judge’s instructions. Under Strickland, our review of this tactical decision “must be highly deferential,” and we must accord the decision “a strong presumption” of validity, regardless of whether we agree with it. We are not persuaded that appellant has overcome that strong presumption.
Id. (citation to Strickland omitted).
In Fields v. Woodford, 309 F.3d 1095 (9th Cir.2002), Fields appealed the district court’s summary judgment of his habeas petition. Id. at 1097-98. Fields contended “his counsel rendered ineffective assistance by failing to conduct meaningful voir dire, specifically, by failing to question at all [beyond the questions asked by the *949 court] six of the jurors who were ultimately empaneled.” Id. at 1107. Fields further contended that competent counsel, given potential juror Hilliard’s equivocal answer as to impartiality due to an assault against Hilliard’s wife, “would have questioned him further about the incident, challenged him for cause, and if that challenge were denied, exercised a peremptory challenge to remove him from the jury.” Id. This court stated:
Whether counsel was deficient is a close call. On the one hand, it is tough to imagine why he did not pursue what kind of assault Hilliard’s wife suffered, given that the non-capital charges against Fields included rape. On the other hand, it may be that he decided not to emphasize Fields’s behavior through additional questioning, or that counsel believed Hilliard’s statement that he could base his decision strictly on the evidence despite his wife’s experience. At oral argument the state suggested another possibility: that counsel may have wanted to keep Hilliard on the jury because he was African-American.
Id. at 1108. This court concluded it could “not say that failure to inquire beyond the court’s voir dire was outside the range of reasonable strategic choice.” Id.
In Hovey v. Ayers, 458 F.3d 892 (9th Cir.2006), Hovey appealed the district court’s denial of his petition for a writ of habeas corpus. Id. at 897. One of Hovey’s claims was that counsel’s voir dire was so perfunctory that counsel failed to protect Hovey’s rights to an impartial jury. Id. at 909. Specifically, Hovey contended that “counsel should have questioned potential jurors on both the widespread pretrial publicity and Hovey’s decision not to testify.” Id. at 910. This court rejected the claim. Id. This court stated that “[t]he conduct of voir dire “will in most instances involve the exercise of a judgment which should be left to competent defense counsel.’ ” Id. (quoting Gustave v. United States, 627 F.2d 901, 906 (9th Cir.1980)). Counsel testified that he believed the least voir dire to be the best tactic, explaining that he preferred to rely on “nonverbal communication.” Id. Thus, this court held counsel’s performance was not deficient under Strickland. Id.
Similarly here, Carrera has not overcome the strong presumption that defense counsel’s decision not to challenge the prosecutor’s peremptory challenges was strategic. There are many reasons why an attorney may strike a juror. See, e.g., Felkner v. Jackson, 562 U.S. -, 131 S.Ct. 1305, 179 L.Ed.2d 374 (2011) (per curiam) (holding that perceived racial harassment by police and educational background were permissible grounds for exercising peremptory challenges); Rice, 546 U.S. at 341, 126 S.Ct. 969 (holding that “eye rolling” and “youthfulness” were permissible grounds for exercising a peremptory challenge). Further, there are many reasons why defense counsel may have supported the removal of the Hispanies struck by the prosecutor. Indeed, defense counsel may have been pleased with the resulting jury, despite the fact that the prosecutor had removed several Hispanic venirepersons. Moreover, when the prosecutor peremptorily challenged each Hispanic, defense counsel may have made a split-second decision that the challenge was on a permissible, bias-neutral ground, and that a Wheeler motion would therefore be futile. Carrera does not address these possibilities. The only evidence Carrera has proffered in support of the assertion that defense counsel was ineffective in not making a Wheeler motion is the declaration of an expert, who was not present at voir dire to observe the demeanor or appearance of the prospective jurors and did not even review any part of the voir dire transcript. This court has previously re *950 jected similar (and stronger) evidence as unpersuasive. See Paradis v. Arave, 954 F.2d 1483, 1491 (9th Cir.1992) (rejecting an attorney’s testimony in support of habeas petitioner’s ineffective assistance of counsel claim because the attorney was not present to observe the demeanor of jurors and reviewed voir dire of only the jurors ultimately empaneled), rev’d on other grounds, 507 U.S. 1026, 113 S.Ct. 1837, 123 L.Ed.2d 463 (1993).
Judge Tashima, in dissent, contends that defense counsel’s failure to make a Wheeler motion was deficient performance. Respectfully, the dissent errs in three significant ways. First, the dissent focuses on whether defense counsel could establish a prima facie case under Wheeler, while largely ignoring Wheeler’s second step— the prosecutor’s opportunity to respond with a group bias-neutral reason for exercising the peremptory challenge. Even if we were to assume a prima facie case could have been made, a group bias-neutral reason for exercising a peremptory challenge would defeat a Wheeler motion, and the presence of such a reason could cause a reasonable defense attorney under the circumstances to decline to make a Wheeler motion.[16] The group bias-neutral reasons defense counsel could have anticipated would be forthcoming are set forth above as to each venireperson struck.
Second, the dissent employs the “smell test” summarily to conclude that “a reasonable attorney in the same circumstances would have objected.” Dissent at 18738. However, it is not clear why this is so. To the extent the dissent concludes a reasonable attorney should have made a Wheeler motion based solely on the percentage of each race that was challenged by the prosecutor, this ironically reinforces the very racial stereotypes that Wheeler and Batson were meant to prevent. See Batson, 476 U.S. at 89, 106 S.Ct. 1712 (“[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State’s case against a black defendant.”); see also Powers v. Ohio, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (“A person’s race simply is unrelated to his fitness as a juror. We may not accept as a defense to racial discrimination the very stereotype the law condemns.” (internal quotation marks and citation omitted)).
Further, the dissent brushes aside as irrelevant the possibility that defense counsel was pleased with the resulting jury.[17] It also mistakes the role of defense counsel. Defense counsel’s duty is to represent her client with zeal and vigor in an effort to acquit her client of the charged counts. It is not deficient performance to decline to move to strike a jury that defense counsel believes gives her client the best chances of being acquit *951 ted — even if defense counsel is convinced the prosecutor exercised his peremptory challenges in an impermissible manner. As discussed in depth above, a potential juror who is in favor of the death penalty is a bad juror for a death-penalty-eligible defendant, even if the defendant and that juror happen both to be Hispanic. Thus, defense counsel would be reasonable in failing to make a Wheeler motion, and to require counsel to object to the jury under these circumstances would be to require counsel to put the interests of her client second. This we cannot hold.
Lastly, the dissent is misguided in concluding that under these circumstances, a reasonable attorney would have at least “developed the record.” Dissent at 955. This phrase, “develop a record,” is often found in proceedings such as habeas corpus hearings or civil depositions, where evidence can be introduced by question and answer. This phrase sounds as if it is something every reasonably proficient attorney can and should do, but the dissent overlooks one thing: the only way to “develop a record” as to group or race bias in jury selection is to make a Wheeler motion. This forces the prosecutor to justify the peremptory challenge, and if the prosecutor fails to provide a reasonable group bias-neutral justification, the whole jury is replaced. Wheeler, 148 Cal.Rptr. 890, 583 P.2d at 765 (holding that the remedy for a successful Wheeler motion is that “a different venire shall be drawn and the jury selection process may begin anew”). Thus, to “develop a record,” defense counsel would have to risk losing a jury from which several pro-death penalty jurors had been stricken. If a new panel resulted in seating more pro-death penalty jurors, would the dissent be prepared to hold the Wheeler/Batson challenge was ineffective assistance of counsel? To incur the risk of losing a fairly good jury would not seem to be “reasonable representation,” and surely is not required under Strickland.

V

At the end of the day, this case comes down to Carrera’s failure to carry his burden of proof so as to overcome the presumption this court has cited. Strickland requires that the panel “indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Not “must,” not “would,” but “might.” Based on the tactical nature of jury selection, the presence of some reasons for not bringing Wheeler motions to challenge the prosecutor’s peremptory challenges of these specific jurors, and the dearth of evidence Carrera provided to overcome the strong presumption in favor of defense counsel’s reasonableness — Carr-era presented only a deposition from an expert who neither witnessed voir dire to observe the demeanor of the attorneys and jurors involved, nor even reviewed any part of the voir dire transcript — Carrera’s Strickland claim must be denied.
AFFIRMED.

. The term "Hispanic” is used to mean persons whose birth surnames derive from Spain, Portugal, or lands colonized by either. No particular racial characteristics are implied by the term.

. In a memorandum disposition filed concurrently with this opinion, we affirm the denial of the remainder of Carrera’s claims.

. The district court erred when it concluded Carrera failed to show there was a "strong likelihood of discriminatory purpose,” citing two California Court of Appeal cases which held that a Wheeler motion could not be successful if the prosecutor left two or three members of the cognizable group on the jury. See Carrera v. Ayers, 2008 WL 681842, at *26 (E.D.Cal.2008) (citing People v. Davis, 189 Cal.App.3d 1177, 234 Cal.Rptr. 859 (1987); People v. Boyd, 167 Cal.App.3d 36, 212 Cal.Rptr. 873 (1985)). These cases were not decided until two and four years after Carrera's trial in 1983; the district court should not have relied upon them. We must assess Carr-era’s trial counsel’s performance "as of the time of counsel's conduct.” Strickland, 466 U.S. at 690, 104 S.Ct. 2052. Nonetheless, "[w]e may affirm [the district court] on any basis supported by the record even if the district court did not rely on that basis.” United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992) (internal quotation marks omitted). As shown below, we affirm on grounds the proof submitted does not demonstrate Carrera's defense counsel rendered deficient performance.

. "Qualified” jurors are those jurors passed for cause.

. The long delay was due, in part, to Carrera exhausting some habeas corpus claims in state court. In 2004, the district court granted Carrera’s motion for summary judgment on his claim that the jury’s special circumstance findings resulted in a violation of his due process rights — as a result, Carrera became ineligible for the death penalty.

. Similarly, we need not and do not address the dissent's contention that prejudice must be presumed under Strickland when counsel’s alleged errors result in a structural error.

. The deficiency requirement as to counsel's assistance, under Strickland, may be based on state law. See Valdovinos v. McGrath, 598 F.3d 568, 580 (9th Cir.2010) (“Trial counsel’s failure to object to evidence inadmissible under state law can constitute deficient performance under Strickland.").

. People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).

. We need not, and therefore do not, decide whether a Wheeler motion would have been successful.

. Put another way, whether failure to make the Wheeler motion “might be considered sound trial strategy,” Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (emphasis added).

. This question erroneously refers to seven, rather than six, prospective Hispanic jurors. During voir dire, Juror Torres explained that she was "white,” and that her surname was her husband's last name. Thus, there were only six Hispanics stricken by the prosecution.

. During Carrera’s state habeas proceedings, nearly five years after jury selection, the prosecutor submitted a declaration in which he stated he could not remember the reasons for his peremptory challenges, but that he was certain that he did not exercise the peremptory challenges based on racial grounds.

. Indeed, the district court reviewed the voir dire of each juror with a Hispanic surname and concluded that reasons independent of group bias supported each peremptory challenge. Carrera v. Ayers, No. 1:90-CV-00478AWI, 2008 WL 681842, at *11-19, *27-29 (E.D.Cal. March 11, 2008).

. In his brief, Carrera performs a comparative analysis as to four of the six stricken Hispanics in an effort to show the prosecution's peremptory challenges were based on group bias. A comparative analysis compares the questions to, and answers from, similarly situated jurors in an effort to uncover the actual motivations behind a peremptory challenge. See generally Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005).

. Celedón gave equivocal answers as to whether she could vote for the death penalty, similar to the answers given by Colaustn>— who was not stricken by the prosecutor. Carrera performs no comparative analysis as to Celedón. Moreover, Celedón's answers during voir dire made it clear she did not want to serve on Carrera's jury. This is a significant distinction which could cause the prosecutor to challenge Celedón over Colaustro.

. The dissent points out that the prosecutor failed — almost five years after jury selection— to remember the reasons he struck the Hispanic jurors in this case. Dissent at 953 n. 2. Contrary to the dissent’s contention, however, the prosecutor’s failure to remember does not mean that no group bias-neutral reasons existed. Indeed, the prosecutor declared under penalty of perjury that he had group bias-neutral reasons at the time, and could have explained them had a Wheeler motion been made. See supra page 948.

. The dissent ignores the record to conclude that "trial counsel’s failure to make a Wheeler motion was not based on trial strategy.” Dissent at 954. During state habeas proceedings, defense counsel testified she did not know why she failed to make a Wheeler motion “at this time” — that is, at the time of her declaration over four years after jury selection. This implies that there was a reason defense counsel did not make a Wheeler motion, but that she could not remember it due to the passage of time.